UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DONTAY L. JONES,                           )
                                           )
                     Petitioner,           )
                                           )
          v.                               )          No. 2:20-cv-00619-JPH-DLP
                                           )
DUSHANE ZATECKY,                           )
                                           )
                     Respondent.           )

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Investigators at Putnamville Correctional Facility determined that Dontay Jones conspired with a former inmate to engage in an unauthorized financial transaction. In his petition for a writ of habeas corpus, Mr. Jones challenges his conviction and the sanctions that were imposed at the disciplinary proceeding. For the reasons that follow, Mr. Jones' petition is **denied**, and this action is **dismissed**.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

After listening to recordings of telephone calls, Analyst T. Maslin determined that Mr. Jones used the identification number of another inmate ("Offender 1") to call a recently released inmate ("Offender 2") on February 13, 2020. Dkt. 9; dkt. 11-1.

According to Maslin, Offender 2 asked Mr. Jones if he remembered a certain inmate, Offender 3. Dkt. 11-1. Offender 3's mother "hollered at him," so he "went over on 30th street." *Id.* Mr. Jones asked if Offender 2 was "good to the new number." *Id.*

Maslin understood this exchange to mean that Offender 2 collected $30 from a family member or friend of Offender 3 and transmitted it to Mr. Jones using a second phone number. Dkt. 9. Maslin wrote a conduct report describing the phone call and charging Mr. Jones with conspiring to engage in an unauthorized financial transaction in violation of Codes 220 and 240. Dkt. 11-1. In the report, Maslin explained:

> Based on recent investigations, knowledge, experience of the prison system and offender trends/known practices, this type of verbiage is often associated to unauthorized financial transactions. Offenders often use this type of verbiage to avoid detection and to direct friends and/or loved ones to retrieve and/or send money in an unauthorized manner.

*Id.*

On June 29, 2020, Mr. Jones received a screening report notifying him of the charge. Dkt. 11-2. The screening officer wrote that Mr. Jones requested a transcript of the phone call. *Id.* A separate notation states, "waive tran scripts [*sic*]" in different handwriting, with "Dontay L Jones I" written next to it in script. *Id.* Mr. Jones asserts that someone else wrote that notation and signed his name after his disciplinary hearing. Dkt. 13 at 2. The notation is not visible on the copy of the screening report he submitted with his petition. Dkt. 2-1 at 2.

Mr. Jones was found guilty at a hearing on July 7, 2020. Dkt. 11-5. The hearing officer considered the conduct report and Maslin's investigative report before finding Mr. Jones guilty. *Id.*; dkt. 15 at ¶ 5. The hearing officer wrote, "H/O find offender guilty due to reports." Dkt. 11-5.

The hearing officer assessed sanctions, including a loss of earned credit time and a demotion in credit-earning class. *Id.* Mr. Jones brought two unsuccessful administrative appeals based on a variety of issues, including failures to comply with Indiana Department of Correction ("IDOC") policies and a lack of supporting evidence. Dkts. 11-6, 11-7.

### III. Analysis

Mr. Jones challenges his disciplinary conviction and sanctions on four grounds: (1) there was insufficient evidence to support the hearing officer's decision; (2) he was wrongly denied evidence to use in his defense; (3) the hearing officer did not adequately explain his decision; and (4) the hearing officer was not impartial.

### A.      Sufficiency of Evidence

Mr. Jones argues that the hearing officer's decision lacked sufficient evidentiary support. Specifically, the record presented to the hearing officer did not include audio or video evidence, a transcript of the phone call, a confidential investigative report, or an affidavit from Maslin.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The

some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Code 220 prohibits "[e]nagaging in . . . unauthorized transactions," including "[g]iving, transferring, sending, trading, transmitting or in any other manner moving monies or other currencies from an offender or their associate to another person or from another person to an offender or their associate without the prior authorization of a facility Warden." Dkt. 11-8 at § 220.

The hearing officer reviewed Maslin's investigative report and conduct report. *See* dkt. 11-5 (report of disciplinary hearing); dkt. 9 (sealed ex parte exhibit—confidential investigative report); dkt. 15 (declaration of hearing officer). Those documents describe a phone call during which Offender 2 discusses another inmate's mother going "over on 30th Street" and Mr. Jones discusses "the new number." *See* dkt. 11-1; dkt. 9. These documents also include Maslin's explanation that, based on her knowledge and experience, she understood this conversation to mean that Offender 2 obtained $30 from Offender 3's family member or friend and transmitted it to Mr. Jones using a second phone number. *Id.*

The investigative report and conduct report are evidence that Mr. Jones conspired with Offender 2 to make an unauthorized financial transaction, that is, transmit money to Mr. Jones from another person without the Warden's authorization. While the hearing record does not include

4

a transcript of the phone call or any audio or video evidence, due process requires only "some evidence" that supports the hearing officer's decision, and the investigative report and conduct report satisfy that requirement. *Eichwedel*, 696 F.3d at 675.

## B.    Denial of Evidence

Mr. Jones next argues that his request for "a copy of the transcribed calls" was denied, and that the hearing officer did not see or consider such transcripts. Mr. Jones did not raise this argument in his administrative appeals, and, in any event, it fails on the merits.

A court may not grant a habeas petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). When the petitioner "has not exhausted a claim and complete exhaustion is no longer available, the claim is procedurally defaulted," and the district court may not grant habeas relief based on it. *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019). Because Indiana law does not provide for judicial review of prison disciplinary proceedings, § 2254(b)(1)'s exhaustion requirement demands that the prisoner exhaust his claims through the IDOC's administrative appeals process. *Moffat*, 288 F.3d at 981–82.

The respondent has not filed or cited the IDOC's administrative appeals process. Still, there is no dispute that the process exists and consists of two steps, as Mr. Jones presented administrative appeals to the facility head and appeal review officer. Dkts. 11-7, 11-8; *see also Jackson v. Wrigley*, 256 F. App'x 812, 814 (7th Cir. 2007) ("To avoid procedural default, an Indiana prisoner challenging a disciplinary proceeding must fully and fairly present his federal claims to the facility head and to the Final Reviewing Authority.").

There also is no dispute that Mr. Jones failed to raise the denial of his transcript request in his administrative appeals. Mr. Jones asserts in his petition that he "was not aware of the legal basis" for this issue until October 2020. Dkt. 2 at 2. But he must have known when he filed his administrative appeals that he did not receive the transcript he requested. Mr. Jones therefore has not demonstrated good cause for failing to raise the transcript issue in his administrative appeals, and he does not argue that he will suffer a miscarriage of justice if the Court does not consider that claim. *See Perruquet*, 390 F.3d at 514 ("A procedural default will bar a federal court from granting relief on a habeas claim *unless* the petitioner demonstrates cause for the default and prejudice resulting therefrom, . . . or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits.") (internal citation omitted).

By failing to provide details about deadlines or other limitations on the administrative appeals process, Mr. Jones has fallen short of demonstrating that "complete exhaustion is no longer available." *Martin*, 749 F. App'x at 464. Thus, the Court cannot deem Mr. Jones' transcript argument procedurally defaulted. Nevertheless, Mr. Jones did not exhaust this argument in his administrative appeals, so "the exhaustion doctrine precludes" this Court "from granting him relief on that claim." *Perruquet*, 390 F.3d at 514.

Had Mr. Jones exhausted his arguments about the call transcripts, they would fail on the merits. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

As the petitioner, Mr. Jones faces the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). Mr. Jones argues only that his request for a transcript was denied. He does not offer any insight as to what he believes a transcript would have revealed or how it would have aided his defense. As a result, the Court cannot find that Mr. Jones was denied material, exculpatory evidence.

## C.    Written Explanation of Decision

Mr. Jones argues that the hearing officer violated his right to a written statement of the reasons underlying his decision. Mr. Jones also failed to raise this argument in his administrative appeals, *see* dkts. 11-6, 11-7, and his failure to exhaust the issue precludes this Court from considering it. *Perruquet*, 390 F.3d at 514. Regardless, the written-statement requirement is not "onerous," and the hearing officer "need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). The hearing officer's explanation—that Mr. Jones was guilty based on the investigatory report and conduct report—clears this minimal threshold.

## D.    Impartial Decision-Maker

Finally, Mr. Jones states that the denial of his transcript request and the hearing officer's brief explanation show that he was denied his right to a hearing before an impartial decision-maker. The respondent correctly notes that Mr. Jones did not raise the hearing officer's impartiality in his administrative appeals. Therefore, "the exhaustion doctrine precludes" this Court "from granting him relief on that claim." *Perruquet*, 390 F.3d at 514.

Had Mr. Jones exhausted his arguments concerning the hearing officer's impartiality, they would fail on the merits. "'[T]he constitutional standard for impermissible bias is high,' . . . and an adjudicator is entitled to a presumption of 'honesty and integrity' absent clear evidence to the contrary." *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003)). The presumption is overcome—and the right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Piggie*, 342 F.3d at 667. Mr. Jones' arguments that he was denied a transcript of his phone call and that the hearing officer explained his decision too briefly do not overcome the presumption that the hearing officer discharged his duties impartially.

### IV. Conclusion

Dontay Jones's petition for a writ of habeas corpus challenging disciplinary case ISF 20-06-0294 is **denied**. All claims are **dismissed with prejudice**.

The **clerk is directed** to enter **final judgment** consistent with this entry.

**SO ORDERED.**

Date: 10/27/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

8

Distribution:

DONTAY L. JONES
973951
PUTNAMVILLE – CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov